**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DEANDRE BRADLEY,                      )
                                     )
            Plaintiff,               )
                                     )        No. 23 C 5019
      v.                             )
                                     )        Judge Sara L. Ellis
DR. GEORGE LAZOPOULOS;               )
DR. WILLIAM ZIZIC; RACHELLE          )
STOCKMAN; SHERIFF RONALD HAIN;       )
and WELLPATH, LLC,                   )
                                     )
            Defendants.              )

**OPINION AND ORDER**

Plaintiff Deandre Bradley, a disabled individual, filed this lawsuit alleging he did not receive proper dental care while a pretrial detainee at the Kane County Adult Justice Center ("KCAJC"). In his second amended complaint, he brings claims for alleged violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 974, against Ronald Hain, the Sheriff of Kane County, in his official capacity.[1] Bradley also claims that Sheriff Hain, Dr. George Lazopoulos, Rachelle Stockman, and Dr. William Zizic, in their individual and official capacities, and Wellpath, LLC violated his Fourteenth Amendment rights. All Defendants have filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). Because Wellpath's bankruptcy proceeding discharged all of Bradley's claims against Wellpath and Dr. Lazopoulos, Stockman, and Dr. Zizic, the Court dismisses them with prejudice. But Bradley has sufficiently pleaded his Fourteenth Amendment claim against Sheriff Hain and therefore may go forward with this claim.

---

[1] Bradley initially brought these claims against KCAJC but moved to substitute Sheriff Hain as the proper defendant. Doc. 58. The Court granted this motion and substituted Hain for KCAJC. Doc. 64.

## BACKGROUND[2]

KCAJC contracted with Wellpath to have the company provide all medical treatment for its pretrial detainees. Wellpath employed Dr. Lazopoulos, Dr. Zizic, and Rachelle Stockman. Dr. Lazopoulos and Dr. Zizic worked as doctors at KCAJC, and Stockman served as the medical administrator.

Before his incarceration, Bradley sought medical dental treatment at Stoney Island Dental in Chicago, Illinois. Stoney Island Dental's professionals extracted and filled several of Bradley's teeth and provided Bradley with a gum disease treatment plan. Bradley and the professionals discussed partial dentures as the next form of treatment. But on March 10, 2023, he entered KCAJC as a pretrial detainee before he received this treatment.

Based on his past experiences with incarceration, Bradley thought that a dental professional would assess him during the intake process. But during KCAJC's intake process, no one assessed or questioned Bradley's dental care concerns. Bradley also believed that he could not request any dental services until after a dental professional assessed him during the intake process. KCAJC's handbook states that "[d]ental services are available to detainees who request it." Doc. 43 ¶ 6.

While incarcerated, Bradley experienced bleeding while brushing his teeth, excessive swelling, cut gums, and random bleeding, pains, and odor in his mouth. Bradley believes his pain stemmed in part from a wisdom tooth on the top right side of his mouth, no other teeth in the back of his mouth, and severely weakened front teeth. He had no control over the food

---

[2] The Court takes the facts in the background section from Bradley's second amended complaint and presumes them to be true for the purpose of resolving Defendants' motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court "may [ ] take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

KCAJC provided, so he had to eat hard food, which exacerbated his oral injuries, pain, and suffering.  Bradley does, however, take pain medications to address other chronic pains unrelated to his dental issues.

Because his dental issues persisted, Bradley submitted a medical grievance request (#594435) on June 3, 2023, complaining about his excessive bleeding gums, swelling, gum disease, oral odor, and need for partial dentures.  On June 5, 2023, KCAJC brought Bradley to see a dental assistant within the facility named Cara Mendez.  Mendez did not examine Bradley's teeth and instead told a KCAJC officer outside the examination room that Wellpath did not have an available dentist and so "nothing would come" from her performing a dental examination except charging Bradley $10.  *Id.* ¶ 18.  Mendez also told this to Bradley and further explained that Wellpath does not employ any dental staff that would address his specific dental needs. Bradley believes that Mendez was not a qualified health professional trained to perform dental examinations.

Because Bradley did not receive a dental examination on June 5, no medical records exist to describe this encounter.  But Bradley kept his own notes describing the interaction.  He also submitted a second grievance request (#594742) on June 7, 2023, explaining what occurred at his appointment with Mendez.  On June 12, 2023, Bradley received a response to his June 7 grievance stating, "This will be forwarded to the medical administrator for clarification response."[3]  *Id.* ¶ 27.  Bradley received a second response later that day stating, "The dentist is here each Friday, you have been added to the list on 6/16."  *Id.* ¶ 54.  But sometime after June 16, Bradley submitted a medical grievance request (#595664) stating that no appointment

---

[3] KCAJC's policy requires that personnel acknowledge detainee grievances within fifteen days of receipt unless circumstances require additional time.  If personnel need additional time, then they must send the detainee a written response through the kiosk stating why they need additional time and an expected completion date.

3

occurred because someone told Bradley that they had rescheduled his appointment to the next available appointment.

On June 30, 2023, Stockman and Dr. Lazopoulos came to Bradley's cell for a "pod visit." *Id.* ¶ 30. Bradley felt shocked by their presence at his cell, but Dr. Lazopoulos and Stockman stated that they were there to clarify what Mendez had told Bradley at his June 5 appointment. Bradley asked Stockman if he could see an outside specialist for his dental issues because the facility and Wellpath could not address his issues, but Stockman said he could not see an outside specialist. She explained that KCAJC's policy does not allow outside referrals because KCAJC is a short-term living facility. Stockman instead told him that he would have to go home or to prison to receive dental treatment for his issues. Dr. Lazopoulos also told Bradley that he was not a periodontist and therefore he could not address any of Bradley's medical grievances or requests. Dr. Lazopoulos did not examine Bradley's teeth.

Bradley's medical records include a June 30 dental note from Dr. Lazopoulos reflecting this pod visit. Dr. Lazopoulos noted that Bradley requested a "periodontal TX which was diagnosed by his Dentist, has bleeding painful gums, also requesting partials. Detainee was told perio tx / partials are not services [ ] provided at this facility." *Id.* ¶ 37. He also noted that "tube of Crest sensitive TP (toothpaste) was provided. RX: saltwater rinse BID x 90 days." *Id.* ¶ 44. He further stated that Bradley should have a follow up exam "in a couple of weeks." *Id.* ¶ 68.

On July 29, 2023, Bradley submitted another grievance (#599634) complaining that the toothpaste was only addressing his teeth sensitivity but none of his other dental concerns, and that rinsing his mouth out with salt did nothing but make his mouth feel raw. Mendez performed

a sick call on August 1, 2023.[4] Bradley explained to the nurse that toothpaste and salt rinses did not address his concerns about having access to periodontal treatment and dentures or his gums' cuts and swelling. Mendez told Bradley that she would schedule him to see a dentist. In Mendez's dental note included in Bradley's medical records, she mentions informing Stockman of Bradley's August 1 sick call because a dentist would not be onsite for three more days.

But Bradley did not see a doctor thereafter. After weeks of inaction, Bradley submitted yet another grievance (#602301) communicating that no one addressed his medical request related to toothpaste and that the salt rinses did not work, using uppercase lettering as an expression of the anger he felt from his ongoing pain. He received a response to this grievance noting that "Sensodyne toothpaste is a four month prescription. [I]t appears you received your toothpaste on 6/30/2023. You will not be due until 10/30/2023. Please remember to use a small amount of toothpaste morning and night. Thank you." *Id.* ¶ 66.

Still experiencing the same symptoms, Bradley filed another grievance on January 8, 2024 (#624781) complaining of the same dental issues and "new problems." *Id.* ¶ 72. The next day, Bradley received a response indicating that someone would forward his grievance to the medical administrator for clarification and response. On January 11, 2024, R. Yohn, who took over Stockman's role as medical administrator, told Bradley that someone submitted a dental sick call for Bradley to see the dentist soon.

On January 16, 2024, Dr. Zizic conducted a dental examination on Bradley through his

---

[4] Bradley alleges that he did not know the name of the nurse who performed a sick call on August 1, Doc. 43 ¶ 62, but later states that his medical records include a dental note from Mendez dated August 1, 2023, *id.* ¶ 69. The Court therefore infers that Mendez performed the August 1 sick call.

cell window.[5]  Following the examination, Mendez entered a dental note into Bradley's medical record, which states:

> Patient orally examined through medical glass cell window with loupes and spotlight showing periodontal plaque, heavy calcuslus [sic], missing teeth, chipped anterior teeth.  Initial impression was ulcerative necrotizing gingivitis and recommended antibiotics which patient refused due to probable urinary infection occurring. Patient does not want to pay $10 each appt.  Treatment plan includes periodontal scaling and root plaining, replacement of molars with partial dentures, any operative fillings.

*Id.* ¶ 77.  This is the first time that someone had examined Bradley's mouth since his incarceration more than ten months earlier and more than six months since he filed his first grievance.  Bradley received a grievance response on January 23, 2024, stating that he refused treatment.  Bradley denies refusing dental treatment because no one offered him any of the action items listed as part of his treatment plan in Mendez's January 16 dental note, but he admits refusing antibiotics.  Based on his conversation with Dr. Lazopoulos and Stockman on June 30, 2023, Bradley does not believe that KCAJC even provides the dental treatment that he needs, meaning he could not have refused treatment that does not exist.[6]  Further, KCAJC's policy requires that detainees sign a document when they refuse treatment or, if a detainee refuses to sign the document, then someone else will sign the document and note that the detainee refused to sign it.  On February 9, 2024, Bradley appealed the response stating that he refused treatment.

Bradley met with Wellpath's regional medical director, Dr. Cleveland Rayford, via telemedicine on March 11, 2024.  At the same time, a nurse named Doris conducted a

---

[5] Bradley states that he does not know, and his medical records do not indicate, if Dr. Zizic was the dentist who performed Bradley's examination on January 16, 2024.  But based on the totality of Bradley's allegations, the Court infers that Dr. Zizic performed Bradley's examination.

[6] Bradley also alleges that his medical records indicate that Dr. Zizic stated that he "informed [Bradley] that [KCJAC] do[es] not provide that service" when Bradley further requested periodontal treatment and dentures at an appointment, but he does not include any more details about this interaction, including a date.  Doc. 43 ¶ 90.

physical examination of Bradley.  Doris is not a dentist or dental assistant.  At this appointment, Bradley informed Dr. Rayford and Doris of his dental issues.  Dr. Rayford noted in Bradley's medical record that part of his treatment plan included seeing a dentist for gingivitis and plaque.

On March 12, 2024, Bradley saw Dr. Zizic, who provided him with some periodontal treatment.  At this appointment, Bradley told Dr. Zizic that he needed his cavities addressed, but Dr. Zizic told Bradley that based on his January 16 examination, he did not have any cavities.  But Bradley reminded Dr. Zizic that the January 16 examination occurred through a cell window and showed Dr. Zizic a place where he felt pain.  Dr. Zizic further assessed Bradley and scheduled a filings appointment for March 26, 2024.  At the end of his March 12 appointment, Bradley requested a treatment plan for his gum disease, but Dr. Zizic only responded by telling Bradley to brush his teeth and offering him toothpaste.  When Bradley inquired about getting dentures, Dr. Zizic again reminded Bradley that "we do not provide that service."  *Id.* ¶ 100.  Bradley again asked to see a specialist for his gum disease and dentures, but Dr. Zizic told Bradley that Wellpath's policy does not allow him to make outside referrals for dental issues because such outside providers are not related to Wellpath.

Although KCAJC and Wellpath personnel told Bradley that their organizations' policies prevent outside referrals, Bradley believes that they will not refer him to an outside provider because Bradley uses a wheelchair and KCAJC does not own or have access to any handicap-accessible transportation.  KCAJC has failed to purchase a handicap-accessible van and failed to hire and train staff that can operate such a van.

As of the date Bradley filed his amended complaint, he still experiences pain and excessive bleeding and has not acquired partial dentures. He only has eighteen teeth left, including his wisdom tooth, which are all "not in good shape." *Id.* ¶ 52. Eating with swollen and cut gums causes him excruciating pain, causing his mouth to bleed so badly at times that he vomits his food from the taste and smell of blood. He suffers from ongoing physical pain, mental anguish, and eating problems.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Defendants filed multiple motions to dismiss. The Court addresses each in turn.

### I.      Wellpath and Wellpath Employees

Wellpath filed two motions to dismiss. Docs. 86, 92. In its first motion, Wellpath argues that Bradley failed to allege sufficient facts to state Claims 4, 5, and 6 against Wellpath. In its

second motion, Wellpath asks the Court to dismiss all claims against Wellpath with prejudice pursuant to a plan of reorganization confirmed by the United States Bankruptcy Court for the Southern District of Texas. Wellpath's employees—Dr. Lazopoulos, Dr. Zizic, and Stockman— filed a separate motion to dismiss Claims 1, 2, and 3 for failure to state a claim of constitutionally inadequate care. Doc. 87.

As background, Wellpath Holdings, Inc. and its affiliated companies each filed bankruptcy petitions in the bankruptcy court under chapter 11 of the United States Bankruptcy Code on November 11, 2024. On November 15, 2024, Wellpath filed a Suggestion of Bankruptcy and Notice of Stay. Doc. 66. Based on this notice, the Court entered an automatic stay of this matter on December 9, 2024. Doc. 70.

On May 21, 2025, Wellpath provided a status update about the bankruptcy proceedings. Doc. 82. Wellpath stated that on May 1, 2025, the bankruptcy court entered its findings of fact, conclusions of law, and order confirming Wellpath's first amended joint chapter 11 reorganization plan. On May 9, 2025, the bankruptcy court lifted the automatic stay and discharged Wellpath "from liability for all claims . . . involving incidents that happened before the bankruptcy (i.e., before November 11, 2024)." *Id.* at 1. The plan provides that claimants still awaiting judgment on claims against Wellpath may participate in alternative dispute resolution or litigate against the liquidating trust as a nominal defendant. Doc. 92 ¶ 13. In light of the confirmed plan, this Court lifted the automatic stay on May 28, 2025 and ordered Defendants to refile any motions to dismiss by June 13, 2025. While Wellpath filed its first motion to dismiss within this deadline, it filed its second motion two weeks after this deadline passed. In the interest of judicial economy, the Court still considers the arguments Wellpath raises in its second motion to dismiss.

9

Wellpath argues that the plan approved by the bankruptcy court discharges "all Claims and Causes of Action against Wellpath Holdings, Inc. and its affiliated debtors" and enjoins the "holders of such Claims and Causes of Action . . . from, among other things, commencing or continuing any proceeding of any kind, including the instant proceeding." Doc. 92 ¶ 5.

Further, although Wellpath does not explicitly raise this argument in its second motion to dismiss, the Court's review of the bankruptcy plan indicates that under Article IX.D of the plan, incarcerated individuals who had personal injury claims pending against non-debtor defendants (Wellpath's directors, officers and other *employees*) had until July 30, 2025 to opt out of the third-party releases of claims against non-debtor defendants.

Wellpath informed Bradley of the bankruptcy court's order and its second motion to dismiss. After receiving Wellpath's notification but before reading its second motion, Bradley asked the Court to strike Wellpath's first motion to dismiss because he states that he is "very well aware of the [bankruptcy] plan and its ruling" and that "there is a great chance that [he] won't be objecting to [ ] doc. #92." Doc. 99 at 2.

Bradley did not subsequently file any formal response in opposition to Wellpath's second motion to dismiss, and his time to do so has passed. Nor did Bradley inform this Court that he opted out of the third-party release by the July 30, 2025 deadline. The docket in Wellpath's bankruptcy case shows that Bradley filed an opt-out request for a different case, *see In re Wellpath Holdings, Inc.*, No. 24-90533, Doc. 2980 (Bankr. S.D. Tex. June 5, 2025), but he does not mention this case in his filing. Because of this filing, Bradley was seemingly aware of the opt-out requirement.

The bankruptcy court-approved reorganization plan calls for the discharge of all claims against Wellpath for events that occurred before November 11, 2024. Bradley's amended

complaint involves events that allegedly occurred between March 10, 2023 and August 30, 2024.

Because the bankruptcy court has approved the plan and because Bradley has not opposed

Wellpath's motion to dismiss, the Court grants Wellpath's motion and will dismiss Wellpath and

Dr. Lazapoulos, Dr. Zizic, and Stockman as defendants from this case. *See Thomas v. Corizon

Health, Inc.*, No. 25-1275, 2025 WL 2171021, at *1 (7th Cir. July 31, 2025) (recognizing that

once a bankruptcy court's deadline for claimants to act has passed, it is "too late" for

claimants—even those representing themselves—to challenge or opt out of the reorganization

plan); *Griffin v. Jensen*, No. 24-CV-53, 2025 WL 3771477, at *2 (E.D. Wis. Dec. 31, 2025)

(dismissing a Wellpath employee from a case with prejudice where the plaintiff knew about

Wellpath's bankruptcy plan opt out option and nothing in the record indicated that the plaintiff

opted out of the third-party release); *Parker v. Gugino*, No. 23-CV-01874, 2025 WL 3264103, at

*2 (S.D. Ind. Nov. 21, 2025) (terminating Wellpath and its employee from an incarcerated

individual's denial of care claims because "the record from the bankruptcy court confirms that

claims against Wellpath and its employees that occurred before the bankruptcy petition had been

discharged"); *Morgan v. Wellpath, LLC*, No. 23-CV-972, 2025 WL 2480416, at *3 (E.D. Wis.

Aug. 28, 2025) (dismissing Wellpath from an incarcerated individual's § 1983 suit asserting

claims of deliberate indifference to his serious medical needs because of the bankruptcy plan).

**II.     Sheriff Hain**

Independent of Wellpath and its employees' motions, Sheriff Hain filed a motion to

dismiss.  Doc. 87.  Bradley did not respond to Sheriff Hain's motion.

**A.     Individual Liability**

Sheriff Hain first argues that Bradley's second amended complaint fails to include any

allegations that he personally caused, participated in, facilitated, approved, or knew of any of

11

Bradley's purported constitutional violations. Sheriff Hain also notes that Bradley does not allege that any Kane County Sheriff employee had any personal involvement in the alleged constitutional violation.

"It is well established that [f]or constitutional violations under § 1983 . . . a government official is only liable for his or her own misconduct." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (alteration in original) (citation omitted) (internal quotation marks omitted); *see also Brown v. Dart*, No. 20-CV-4193, 2021 WL 4401492, at *4 (N.D. Ill. Sept. 25, 2021) ("Individual liability under Section 1983 requires a defendant's personal involvement in the alleged constitutional violation." (citing *Perez*, 792 F.3d at 781)).

After combing through all of Bradley's allegations, the Court agrees that Bradley fails to allege anything related to Sheriff Hain's or Sheriff employees' personal involvement or knowledge in Bradley's dental care. Bradley instead only alleges that KCAJC generally, Wellpath, and Wellpath employees failed to provide him with adequate dental services. Accordingly, Bradley may not proceed with any of his claims against Sheriff Hain in his individual capacity. *See Brown*, 2021 WL 4401492, at *4 ("Brown has not plausibly alleged that Dart was aware of any of his particular conditions, and therefore has failed to state a claim against Dart in his individual capacity.").

## B. *Monell* Liability

Next, Sheriff Hain argues that Bradley fails to allege *Monell* liability for the purpose of his Fourteenth Amendment due process claim. Sheriff Hain specifically contends that Bradley's second amended complaint does not include facts that allow the Court to infer that Sheriff Hain maintained a policy or custom that caused Bradley's alleged constitutional deprivation, or that

12

any such policy or custom was the "moving force" behind Bradley's alleged injury.  Doc. 88 at
5.

To state a *Monell* claim, Bradley must allege: "(1) [he] was deprived of a constitutional
right; (2) the deprivation can be traced 'to some municipal action (i.e., a policy or custom), such
that the challenged conduct is properly attributable to the municipality itself'; (3) 'the policy or
custom demonstrates municipal fault, i.e., deliberate indifference'; and (4) 'the municipal action
was the moving force behind the federal-rights violation.'" *Thomas v. Neenah Joint Sch. Dist.*,
74 F.4th 521, 524 (7th Cir. 2023) (quoting *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214,
235 (7th Cir. 2021)).  Bradley can show municipal action through allegations of (1) an express
policy that, when enforced, causes a constitutional violation; (2) a widespread practice that,
although not authorized by written law or express municipal policy, is so permanent and well-
settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury
caused by a person with final policymaking authority.  *McCormick v. City of Chicago*, 230 F.3d
319, 324 (7th Cir. 2000).  "Inaction, too, can give rise to liability in some instances if it reflects a
conscious decision not to take action."  *Dean*, 18 F.4th at 235 (citation omitted) (internal
quotation marks omitted).  Although the Court does not impose a "heightened pleading standard"
on Bradley's *Monell* claims, *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
507 U.S. 163, 164 (1993), the Court must apply all of *Monell*'s requirements "scrupulously . . .
to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious
liability," *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022) (citation omitted).

Bradley's second amended complaint sufficiently alleges *Monell* liability under § 1983.
Bradley alleges that Sheriff Hain maintains two policies denying him the right to adequate dental
care, including: (1) a policy requiring pretrial detainees to "go home or go to prison" for certain

13

dental treatment because it is a short-term living facility, and (2) a policy refusing to send pretrial detainees to outside providers. Sheriff Hain argues that Bradley failed to allege "what specific dental treatment the Sheriff failed to provide and if [Bradley] required such denied dental treatment." Doc. 88 at 5–6. But Bradley does detail multiple treatments that he believes Sheriff Hain should have provided him, including periodontal scaling and root plaining and replacement of molars with partial dentures. *See, e.g.*, Doc. 43 ¶ 77. And Bradley claims throughout his second amended complaint that Sheriff Hain repeatedly ignored his requests for such dental treatment. Regardless, Sheriff Hain asks too much of Bradley at the motion to dismiss stage. Bradley need not plead particular facts upon which he bases his claim of an official policy or custom because a "short and plain statement" that a government entity's official policy or custom caused his injury is sufficient to survive a motion to dismiss. *See* Fed. R. Civ. P. 8(a)(2).

Sheriff Hain separately argues that the Court should dismiss Bradley's *Monell* claims because Bradley does not connect these two policies to the Sheriff or any other KCAJC employee as the moving force behind Bradley's alleged inadequate dental care. Sheriff Hain maintains that Bradley's second amended complaint only contains allegations concerning Wellpath's employees and policies. But Bradley alleges facts to suggest that KCAJC maintains both purported policies, even if a Wellpath employee told Bradley about such policies. *See* Doc. 43 ¶ 33 (alleging that Stockman told Bradley that "it was policy of the KCAJC [to] not provide treatment for [Bradley]'s specific dental issues or allow outside referrals because KCAJC was a 'short term living facility'" and therefore denying him treatment for his severe dental conditions). Although Sheriff Hain attempts to avoid liability by assigning any blame to KCAJC's contracted medical provider, such an argument fails at this stage when Bradley alleges that the Wellpath employees refused to provide Bradley with adequate medical care because of

14

KCAJC's policies. *See Morgan v. Wellpath, LLC*, No. 23-CV-972, 2023 WL 6623779, at *6 (E.D. Wis. Oct. 11, 2023) (finding the plaintiff's complaint states sufficient facts to allow the plaintiff to proceed on a claim against the municipality defendant based on its alleged policy or practice of providing detainees inadequate or delayed medical care at the jail, even though the jail had contracted with Wellpath to provide medical services).

Finally, Sheriff Hain argues that Bradley's second amended complaint fails to allege a pattern or series of incidents to support the general allegation of a custom or practice. The Court first notes that Bradley seems to allege that KCAJC had *express* policies against providing specific dental treatment and sending detainees to an outside provider. But even assuming Bradley alleges a custom or practice rather than an express policy, Sheriff Hain again asks too much of Bradley at the pleadings stage, at which the Court need only determine whether Bradley has sufficiently alleged his *Monell* claims under the dictates of *Iqbal* and *Twombly*. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (federal courts do not apply a "heightened pleading standard" to *Monell* claims). Indeed, courts have recognized that *Monell* claims may proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (quoting *Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)).

Bradley has included sufficient factual allegations to put Sheriff Hain on notice of the alleged wrongdoing, tying multiple instances where personnel refused to provide Bradley with his requested dental care to KCAJC's alleged custom or practice of refusing certain dental treatments and outside referrals. The fact that Bradley does not include specific details of other individuals' experiences does not warrant dismissal, particularly because his allegations suggest

15

widespread practices, not isolated events. *See Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) (noting that post-*White* courts analyzing *Monell* claims "have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff," collecting cases); *Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at summary judgment, a single incident cannot establish a *Monell* claim, but at the motion to dismiss stage, a plaintiff "need only allege a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists"). Discovery will uncover whether Bradley can prove his *Monell* claims, but at the pleading stage, he has stated a plausible claim for relief. *See Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) ("[T]he City's arguments that Plaintiff's allegations do not 'establish' the existence of a widespread policy are misplaced because at this stage of the proceedings, the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has 'established' or 'proven' his claims.").

Because the Court finds Bradley has sufficiently pleaded his *Monell* claim against Sheriff Hain, Bradley may proceed on this claim.

### C. ADA and Rehabilitation Act Claims

Sheriff Hain argues that Bradley cannot hold the Sheriff or Kane County Sheriff employees liable in their individual capacities for damages under the ADA and the Rehabilitation Act. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) (affirming dismissal of ADA and Rehabilitation Act claims against defendants in their individual capacities). Bradley did not file a response to Sheriff Hain's motion, but in a previous case before this Court, Bradley has acknowledged this same argument. *See Bradley v.*

16

*Hain*, No. 23 C 5020, 2024 WL 4753688, at *4 (N.D. Ill. Nov. 8, 2024) (dismissing Bradley's

ADA and Rehabilitation Act claims against Sheriff Hain and correctional officers in their

individual capacities because Bradley acknowledged the defendants' exact same argument as

presented here).

Sheriff Hain also contends that the Court must dismiss Bradley's ADA and Rehabilitation

Act claims against Sherrif Hain in his official capacity. To bring a claim under Section 202 of

the ADA, Bradley must allege "that he is a 'qualified individual with a disability,' that he was

denied 'the benefits of the services, programs, or activities of a public entity' or otherwise

subjected to discrimination by such an entity, and that the denial or discrimination was 'by

reason of' his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). Similarly, to

bring a claim under Section 504 of the Rehabilitation Act, Bradley must allege "two basic

elements: (1) the plaintiff must be a qualified individual with a disability; and (2) the plaintiff

must have been denied governmental benefits because of his disability." *P.F. by A.F. v. Taylor*,

914 F.3d 467, 471 (7th Cir. 2019).

Bradley alleges that KCAJC did not own and refused to acquire handicap accessible

transportation so that the facility could transport him to external treatment for his dental issues,

as they did for other detainees. But as discussed above, Bradley also claims that KCAJC

maintained a strict policy against referrals to outside providers. The Court cannot reconcile these

contradictory allegations, especially when Bradley spends only a few sentences explaining the

basis for his ADA and Rehabilitation Act claims as compared to the many pages he spends

detailing his other claims. Ultimately, Bradley fails to state a claim under the ADA or

Rehabilitation Act because he did not plausibly allege that he was denied access to any dental

services because of his disability. *See Hughes v. Dart*, No. 20 CV 4049, 2021 WL 5795305, at

*7 (N.D. Ill. Dec. 7, 2021) (dismissing the plaintiff's ADA and Rehabilitation Act claims because he did not allege that the defendants denied access to any services or activities because of his disability).

### D. Injunctive Relief

Finally, Sheriff Hain moves to strike Bradley's request for injunctive relief. Bradley seeks to have the Court order that KCAJC complete multiple actions, including purchase a handicap-accessible transportation van and contract with a medical provider that will address his periodontal treatment. But according to the Illinois Department of Corrections' website, Bradley currently resides at Dixon Correctional Center ("DCC"). *See* IDOC's Individual in Custody Search, https://idoc.illinois.gov/offender/inmatesearch.html (last visited Feb. 24, 2026). And he has not demonstrated a realistic probably that he will return to KCAJC, meaning any injunctive relief would be speculative and directed at DCC officials, who are not parties in this case. The Court therefore strikes Bradley's request for injunctive relief as moot. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004).("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."); *Hanks v. Ashcraft*, No. 3:24-CV-03051, 2025 WL 2229993, at *4 (C.D. Ill. Aug. 5, 2025) (denying the plaintiff's motion for preliminary injunction as moot because the plaintiff's alleged constitutional violations occurred at a correctional center where he no longer resides).

## III. Miscellaneous Motions

Over the past several months, Bradley has filed a handful of miscellaneous motions in this case. First, Bradley filed a motion to strike Wellpath's first motion to dismiss. Doc. 99. The Court denies this motion as moot because the Court has dismissed Bradley's claims against

18

Wellpath pursuant to Wellpath's bankruptcy proceedings. Second, Bradley filed a motion to schedule a status hearing before this Court made any decisions on the motions to dismiss. Doc. 100. The Court also denies this motion as moot because the Court has ruled on Defendants' motions to dismiss. The Court provided Bradley with ample time to respond to Defendants' motions, and instead he only opposed Dr. Lazopoulos, Dr. Zizic, and Stockman's motion to dismiss. Third, Bradley filed a motion to compel Defendants to answer his discovery requests and for sanctions. Doc. 90. The Court entered and continued this motion to the next status date, noting that it would set a date to produce interrogatory answers and documents once it rules on Defendants' motions to dismiss. Doc. 98. Bradley then filed a supplemental motion to his motion to compel and for sanctions, updating the Court on relevant events. Doc. 107. Because the Court has now ruled on Defendants' motions, the Court will address Bradley's motion and supplemental motion to compel and for sanctions at the next scheduled status hearing.

## CONCLUSION

For the foregoing reasons, the Court grants Wellpath's second motion to dismiss [92]. The Court denies Wellpath's first motion to dismiss [86] and Dr. Lazopoulos, Dr. Zizic, and Stockman's motion to dismiss [85] as moot. The Court denies Bradley's motion to strike Wellpath's first motion to dismiss [99] as moot. The Court grants in part and denies in part Sheriff Hain's motion to dismiss [87]. The Court denies Bradley's motion for a status hearing [100] as moot. The Court dismisses Bradley's claims against Wellpath, Dr. Lazopoulos, Dr. Zizic, and Stockman with prejudice. The Court dismisses Bradley's claims against Sheriff Hain in his individual capacity, and his ADA and Rehabilitation Act claims against Sheriff Hain in his individual and official capacities without prejudice. The Court strikes Bradley's request for

19

injunctive relief as moot. The Court will address Bradley's motion to compel and for sanctions [90] and his supplemental motion [107] at the next scheduled status hearing.

Dated: February 25, 2026

_____
SARA L. ELLIS
United States District Judge